IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ALREE B. SWEAT III,**

    Plaintiff,

  v.                                                                      No. 15-cv-0226 RB/SMV

**CITY OF LAS CRUCES,
JAIME MONTOYA, MIRANDA BAKER,
PAUL LUJAN, and FNU SANCHEZ,**

    Defendants.

**<u>MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMEND DISPOSITION</u>**

THIS MATTER is before the Court on the parties' Cross Motions for Summary Judgment [Docs. 65, 68]. The Honorable Robert C. Brack, United States District Judge, referred this case to me for findings and a recommended disposition. [Doc. 4]. Having considered the Complaint and Amended Answer [Docs. 1, 39], briefing,[1] and relevant law and being otherwise fully advised in the premises, I find that the undisputed facts show that Defendant Police Officer Baker had reasonable suspicion to initiate the traffic stop of Plaintiff in the first place. Officer Baker is entitled to qualified immunity. Accordingly, Defendants' Second MSJ [Doc. 68] should be GRANTED, Plaintiff's MSJ [Doc. 65] should be DENIED, and Plaintiff's one remaining federal claim should be dismissed with prejudice. Finally, I recommend that the Court decline to exercise supplemental jurisdiction over the state-law claims, which should be

---

[1] Plaintiff filed his Motion for Summary Judgment ("MSJ") on May 4, 2016. [Doc. 65]. Defendants responded on May 18, 2016. [Doc. 68]. Plaintiff did not reply, and the time for doing so has passed. Defendants filed their Second Motion for Summary Judgment based on Qualified Immunity ("Second MSJ") on May 18, 2016. [Doc. 68]. Plaintiff responded on May 31, 2016. [Doc. 69]. Defendants replied on June 10, 2016. [Doc. 70]. Plaintiff attempted to file a surreply without leave, but it was struck from the record. [Docs. 72, 80].

dismissed without prejudice.  *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (Generally, "if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of [pendent] jurisdiction by dismissing the case without prejudice.") (internal quotation marks and brackets omitted).

## BACKGROUND

Plaintiff's 42 U.S.C. § 1983 claims arise from events on or around September 12, 2012. [Doc. 1] at 4.  Plaintiff alleges that he was lawfully operating his vehicle when Defendants Baker and Lujan, police officers with the Las Cruces Police Department ("LCPD"), began to follow him.  *Id*.  Eventually, Officer Baker activated the lights of her marked patrol vehicle and Plaintiff pulled to the side of the road—but only to let the officers pass him.  When he realized they were not going to pass him, he simply drove on.  *Id*. at 5.  Officer Sanchez, in a separate marked LCPD vehicle, joined Officers Baker and Lujan in pursuing Plaintiff.  *Id*. at 6.  Officer Sanchez implemented a "PIT maneuver" (Precision Immobilization Technique).  *Id*.  He purposefully collided with Plaintiff's car to abruptly turn it sideways, causing Plaintiff to lose control and stop.  *See id*.  Plaintiff was arrested and charged with aggravated fleeing.  *Id.* at 7.  His state criminal trial (case number D-307-CR-201201326) ended in a hung jury, and the trial judge subsequently dismissed Plaintiff's case with prejudice.  *Id*. at 8.

Plaintiff filed this action on May 17, 2015, challenging the constitutionality of the pursuit leading to his arrest.  *Id*.  All of the federal claims have been dismissed except one:  Plaintiff's claim that Officer Baker's attempt to initiate the traffic stop in the first place violated the Fourth

Amendment.[2]  *See* [Docs. 25, 63].  Plaintiff argues that Officer Baker attempted to stop his vehicle to check his identity (i.e., to verify that he was not Willie Yanez, for whom police were searching in order to execute a felony warrant), which Plaintiff believes was prohibited by the Fourth Amendment.  *Id.* at 11−12.

On April 21, 2016, this Court denied in part Officer Baker's first motion for summary judgment based on qualified immunity.  [Doc. 63].  At that time, Officer Baker did not deny that she was looking for Willie Yanez.  *See* [Doc. 48] at 1–2, [Doc. 48-2] at 1–3.  She did not argue one way or the other whether it would have been constitutional to have attempted to initiate the traffic stop solely to investigate Plaintiff's identity (i.e., to check whether he was Mr. Yanez) and for no other reason.  *See* [Doc. 48].  Instead, she said she attempted to stop Plaintiff for a different reason.  She averred that she attempted to pull over Plaintiff's vehicle "for having a cracked windshield."  *Id.* at 2; [Doc. 48-2] at 2.  She provided no other information whatsoever about the crack.  [Doc. 48-2] at 2.

The Court held that driving with a cracked windshield, on its own, did not violate New Mexico law.  [Doc. 63] at 10 (citing NMSA 1978, §§ 66-3-801(A), 66-3-846(A), 66-3-901).  Therefore, to justify an investigatory stop, an officer would need reasonable suspicion that the crack in the windshield made the vehicle unsafe to drive.  [Doc. 63] at 9 (collecting cases).  Neither Officer Baker's affidavit, nor any other evidence in the record at that time, could have supported a reasonable inference that the crack in Plaintiff's windshield made

---

[2] Plaintiff's claims for lack of medical treatment under the Eighth and Fourteenth Amendments were dismissed in a Memorandum Opinion and Order by Judge Brack on August 17, 2015. [Doc. 25] at 3. The remainder of Plaintiff's federal claims (except one) was dismissed with prejudice on April 21, 2016. [Doc. 63] at 12. The myriad state-law claims, however, have never been addressed by this Court. They are not addressed by Defendants' instant Second MSJ. *See* [Doc. 68]. Thus, I do not address the merits of the state-law claims herein either.

(or might have made) the vehicle unsafe to drive. *Id.* at 8−12. Thus, the Court found that Officer Baker was not entitled to qualified immunity on the record as it stood at that time. *Id.*

Based on that ruling—in other words, based on the Court's denial of summary judgment at that time—Plaintiff now asks the Court to grant him summary judgment. [Doc. 65] at 4–5. He argues that Defendants have "never provided . . . any tangible evidence that would refute or cast a shadow of a doubt as to whether the allegations brought forth in [his] initial Complaint [are] factual, prima facial [sic] or otherwise." *Id.* It goes without saying, however, that denying summary judgment to one party does not mean, *ipso facto*, that the opposing party is entitled to judgment in his favor.

Defendants filed their Second MSJ on May 18, 2016. [Doc. 68]. As with their initial MSJ, Defendants argue in their Second MSJ that Officer Baker attempted to pull over Plaintiff's car for having a cracked windshield. This time, however, Officer Baker provides more information about the crack. She says that it "obscured [her] ability to see . . . into the vehicle," which Defendants argue amounts to reasonable suspicion to justify the stop. [Doc. 68] at 5–8. To support their contention, they have attached a second affidavit from Officer Baker as well as excerpts from her testimony at Plaintiff's underlying criminal trial. [Docs. 68-2, 68-3].

Plaintiff responded to the Second MSJ, disputing that the windshield was cracked and insisting that photographs in Defendants' possession would prove him right. [Doc. 69] at 3. The Court construed Plaintiff's response as a request for limited discovery under Fed. R. Civ. P. 56(d) and ordered Defendants to produce to Plaintiff and to the Court any and all photographs depicting the windshield as it existed at the relevant time. [Doc. 71] at 6–7. Defendants timely

4

produced several dozen photographs on July 15 and 18, 2016.  [Docs. 77, 78].    Plaintiff has filed nothing further.

## SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue.  *Liberty Lobby,* 477 U.S. at 248.  Facts are material only where they might affect the outcome of the suit.  *Id.*

While courts "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party, the nonmoving party must present more than a scintilla of evidence in favor of his position." *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citation omitted).  To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250.

However, where a defendant asserts qualified immunity as a defense, a court's analysis of a summary judgment motion is modified.  Once a defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate both that the defendant violated one of the plaintiff's constitutional rights and that the violated right was clearly established at the time of the violation.  *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).  If the plaintiff successfully

satisfies this "heavy two-part burden," the defendant must then prove that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) (citations omitted).

Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as [he] maintains.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th cir. 2010)); *accord Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015). However, courts "do not always require case law *on point*," *Morris v. Noe*, 672 F.3d 1185, 1196–97 (10th Cir. 2012) (emphasis added), and "the Supreme Court has warned that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances,'" *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  Courts "have therefore adopted a sliding scale to determine when law is clearly established.  'The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Id.* (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)); *accord Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008). Although a plaintiff need not show that "the very action in question [has] . . . previously been held unlawful, 'in the light of pre-existing law[,] the unlawfulness must be apparent.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Lastly, in determining whether a plaintiff has satisfied the necessary two-prong qualified-immunity showing, courts ordinarily accept the plaintiff's version of the facts—that is, "the facts alleged," *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)—but "because at summary judgment we are beyond the pleading phase of the litigation, [the] plaintiff's version of the facts must find support in the record," *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009); *see York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) ("As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'" (alterations in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))).

## INVESTIGATORY STOPS OF VEHICLES

To justify an investigatory stop, an "officer must have reasonable suspicion to believe that criminal activity may be afoot." *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010) (internal quotation marks omitted). "[T]he existence of objectively reasonable suspicion of illegal activity does not depend upon any one factor, but on the totality of the circumstances." *Id.* (internal quotation marks omitted). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc).

Under New Mexico law, an officer may stop a motor vehicle with a cracked windshield if the officer has reasonable grounds to believe that the crack makes the vehicle dangerous to operate. *State v. Muñoz*, 1998 NMCA 140, ¶ 14, 125 N.M. 765; *see* NMSA 1978,

§§ 66-3-801(A),[3] 66-3-846(A),[4] 66-3-901[5]); *United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001) (finding that a windshield crack about 12 inches across and 6 inches high—large enough that the officer could view it from behind the car—constituted reasonable articulable suspicion that the driver's view was obstructed in violation of Kansas law); *United States v. Alvarez-Becerra*, 33 F. App'x 403, 407 (10th Cir. 2002) (holding that a cracked windshield can support a lawful traffic stop if the officer reasonably believes that the crack makes operating the vehicle dangerous).

---

[3]
> Except as otherwise provided in this section, it is a misdemeanor for any person to drive or move or for the owner to cause or permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as is required by Sections 66-3-801 through 66-3-887 NMSA 1978 or which is equipped in any manner that is in violation of those sections or for any person to do any act forbidden or fail to perform any act required under those sections.

NMSA 1978, § 66-3-801(A).

[4]
> No person shall drive any motor vehicle with any sign, poster or other nontransparent material upon or in the front windshield, windows to the immediate right and left of the driver or in the rearmost window if the latter is used for driving visibility, except as provided in Section 66-3-846.1 NMSA 1978. The rearmost window is not necessary for driving visibility where outside rearview mirrors are attached to the vehicle.

NMSA 1978, § 66-3-846(A).

[5]
> No person shall drive or move on any highway any motor vehicle, trailer, semitrailer or pole trailer or any combination thereof unless the equipment upon every vehicle is in good working order and adjustment as required in the Motor Vehicle Code [66-1-1 NMSA 1978], and the vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway.

NMSA 1987, § 66-3-901.

## ANALYSIS

Officer Baker is entitled to qualified immunity. The photographs submitted by Defendants depict a crack in the front windshield of Plaintiff's vehicle running horizontally, in the top half of the windshield, for nearly the entire length of the windshield. [Doc. 77] (Exhibit A, photographs labeled E1U08225, E1U08223, E1U08222, EIU08216, C9140869, C9140867, C9140866, C9140860a, C9140860).[6] No authority suggests—much less is it clearly established—that on seeing such a cracked windshield, a police officer would *not* have reasonable suspicion to initiate a traffic stop. In fact, the authorities suggest the opposite. *See Muñoz*, 1998 NMCA 140, ¶ 14; NMSA 1978, §§ 66-3-801(A), 66-3-846(A), 66-3-901; *Callarman*, 273 F.3d at 1287; *Alvarez-Becerra*, 33 F. App'x at 407. Astonishingly, Plaintiff has denied that his windshield was cracked at all. [Doc. 69] at 3. However, Plaintiff's denial is blatantly contradicted by the photographs. No reasonable jury could find that there was no crack. Under the circumstances here, on seeing the crack in Plaintiff's windshield, a reasonable officer would have reasonably suspected that Plaintiff was driving the vehicle in violation §§ 66-3-801(A), 66-3-846(A), and/or 66-3-901. Officer Baker is entitled to qualified immunity for attempting to pull Plaintiff over.

## CONCLUSION

I respectfully recommend that Plaintiff's Motion for Summary Judgment [Doc. 65] be DENIED. Further, I recommend that Defendants' Second Motion [for] Summary Judgment Based on Qualified Immunity [Doc. 68] be GRANTED. Plaintiff's one remaining federal claim (related to Officer Baker's attempt to initiate the traffic stop) should be DISMISSED with

---

[6] Because of the angle at which the photographs were taken, the crack is most obvious in the photographs taken from the rear of the vehicle. *See, e.g.*, [Doc. 77] (Exhibit A, photograph labeled E1U08225). Although the photograph is taken through the rear window, it clearly shows the crack in the front windshield.

prejudice. Finally, I recommend that the Court decline to exercise supplemental jurisdiction over the state-law claims, which should be dismissed without prejudice. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (Generally, "if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of [pendent] jurisdiction by dismissing the case without prejudice.") (internal quotation marks and brackets omitted).

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**