IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALREE B. SWEAT III,

    Plaintiff,

v.                                                                            No. 15-cv-0226 RB/SMV

CITY OF LAS CRUCES,
JAIME MONTOYA, MIRANDA BAKER,
PAUL LUJAN, and FNU SANCHEZ,

    Defendants.

**<u>MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMEND DISPOSITION</u>**

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition ("PF&RD") [Doc. 81], issued on July 28, 2016. On reference by the undersigned [Doc. 4], the Honorable Stephan M. Vidmar, United States Magistrate Judge, found that the undisputed facts showed that Defendant Police Officer Baker had reasonable suspicion to initiate the traffic stop of Plaintiff and, thus, was entitled to qualified immunity. Accordingly, Judge Vidmar recommended: (1) granting Defendants' Second Motion for Summary Judgment ("MSJ") [Doc. 68], (2) denying Plaintiff's MSJ [Doc. 65], (3) dismissing with prejudice Plaintiff's one remaining federal claim (arising from Officer Baker's attempt to initiate the stop), and (4) declining to exercise supplemental jurisdiction over the state-law claims, which he recommended dismissing without prejudice. [Doc. 81] at 2 (citing *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (Generally, "if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of [pendent] jurisdiction by

dismissing the case without prejudice.") (internal quotation marks and brackets omitted)). Plaintiff timely objected to the PF&RD on August 11, 2016. [Doc. 84].

On the same day that Judge Vidmar issued his PF&RD, the Court Clerk docketed a Second Motion for Summary Judgment filed by Plaintiff. [Doc. 82]. Defendants moved to strike it as "untimely and procedurally improper." [Doc. 83] at 2. Plaintiff responded to the Motion to Strike on August 22, 2016. [Doc. 86]. Defendants have not replied, and no reply is needed.

The Court has considered all of the relevant briefing, the record, the relevant law, and is otherwise fully advised in the premises. On de novo review of the portions of the PF&RD to which Plaintiff objects, the Court finds that the material facts are not in dispute, and Officer Baker had reasonable suspicion to attempt to initiate the traffic stop. She is, therefore, entitled to qualified immunity. Accordingly, the Court will overrule Plaintiff's objections [Doc. 84], adopt the PF&RD [Doc. 81], deny both of Plaintiff's Motions for Summary Judgment [Docs. 65, 82], grant Defendants' Second MSJ [Doc. 68], deny as moot Defendants' Motion to Strike [Doc. 83], dismiss with prejudice Plaintiff's one remaining federal claim, decline to exercise jurisdiction over Plaintiff's state-law claims, and dismiss them without prejudice.

## BACKGROUND

Plaintiff's 42 U.S.C. § 1983 claims arise from events on or around September 12, 2012. [Doc. 1] at 4. Plaintiff alleges that he was lawfully operating his vehicle when Defendants Baker and Lujan, police officers with the Las Cruces Police Department ("LCPD"), began to follow him. *Id*. Eventually, Officer Baker activated the lights of her marked patrol vehicle and Plaintiff pulled to the side of the road—but only to let the officers pass him. When he realized they were

not going to pass him, he simply drove on. *Id*. at 5. Officer Sanchez, in a separate marked LCPD vehicle, joined Officers Baker and Lujan in their pursuit of Plaintiff. *Id*. at 6. Officer Sanchez implemented a "PIT maneuver" (Precision Immobilization Technique). *Id*. He purposefully collided with Plaintiff's car to abruptly turn it sideways, causing Plaintiff to lose control and stop. *See id*. Plaintiff was arrested and charged with aggravated fleeing. *Id.* at 7. His state criminal trial (case number D-307-CR-201201326) ended in a hung jury, and the trial judge subsequently dismissed the case with prejudice. *Id*. at 8.

Plaintiff filed this action on May 17, 2015, challenging the constitutionality of the pursuit leading to his arrest. *Id*. All of the federal claims have been dismissed except one: Plaintiff's claim that Officer Baker's attempt to initiate the traffic stop in the first place violated the Fourth Amendment.[1] *See* [Docs. 25, 63]. Plaintiff argues that Officer Baker attempted to stop his vehicle to check his identity (i.e., to verify that he was not Willie Yanez, for whom police were searching in order to execute a felony warrant), which Plaintiff believes was prohibited by the Fourth Amendment. [Doc. 1] at 11−12.

On April 21, 2016, the Court denied in part Officer Baker's first motion for summary judgment based on qualified immunity. [Doc. 63]. At that time, Officer Baker did not deny that she was looking for Willie Yanez. *See* [Doc. 48] at 1–2, [Doc. 48-2] at 1–3. She did not argue one way or the other whether it would have been constitutional to have attempted to initiate the traffic stop solely to investigate Plaintiff's identity (i.e., to check whether he was Mr. Yanez) and

---

[1] The Court dismissed Plaintiff's claims for lack of medical treatment under the Eighth and Fourteenth Amendments in a Memorandum Opinion and Order on August 17, 2015. [Doc. 25] at 3. The Court then dismissed with prejudice the remainder of Plaintiff's federal claims (except one) on April 21, 2016. [Doc. 63] at 12. The myriad state-law claims, however, have never been addressed by this Court. They are not addressed by Defendants' instant Second MSJ. *See* [Doc. 68]. Thus, Judge Vidmar did not address their merits in his PF&RD, and neither does the Court.

3

for no other reason.  *See* [Doc. 48].  Instead, she said she attempted to stop Plaintiff for a different reason.  She averred that she attempted to pull over Plaintiff's vehicle "for having a cracked windshield."  *Id.* at 2; [Doc. 48-2] at 2.  She provided no other information whatsoever about the crack.  [Doc. 48-2] at 2.

The Court held that driving with a cracked windshield, on its own, did not violate New Mexico law.  [Doc. 63] at 10 (citing NMSA 1978, §§ 66-3-801(A), 66-3-846(A), 66-3-901).  To justify an investigatory stop, an officer would need reasonable suspicion that the crack in the windshield made the vehicle unsafe to drive.  [Doc. 63] at 9 (collecting cases).  Neither Officer Baker's affidavit, nor any other evidence in the record at that time, could have supported a reasonable inference that the crack in Plaintiff's windshield made (or might have made) the vehicle unsafe to drive.  *Id.* at 8−12.  Thus, the Court found that Officer Baker was not entitled to qualified immunity on the record as it stood at that time.  *Id.*

Based on that ruling—in other words, based on the Court's denial of summary judgment at that time—Plaintiff filed his first MSJ, asking the Court to grant him summary judgment. [Doc. 65] at 4–5.  He argues that Defendants have "never provided . . . any tangible evidence that would refute or cast a shadow of a doubt as to whether the allegations brought forth in [his] initial Complaint [are] factual, prima facial [sic] or otherwise."  *Id.*  It goes without saying, however, that denying summary judgment to one party does not mean, *ipso facto*, that the opposing party is entitled to judgment in his favor.

Defendants filed their Second MSJ on May 18, 2016.  [Doc. 68].  As with their initial MSJ, Defendants argue in their Second MSJ that Officer Baker attempted to pull over Plaintiff's car for having a cracked windshield.  This time, however, Officer Baker provides more

4

information about the crack.  She says that it "obscured [her] ability to see . . . into the vehicle," which Defendants argue amounts to reasonable suspicion to justify the stop.  *Id.* at 5–8.  To support their contention, they have attached a second affidavit from Officer Baker as well as excerpts from her testimony at Plaintiff's underlying criminal trial.  [Docs. 68-2, 68-3].

Plaintiff responded to Defendants' Second MSJ, disputing that the windshield was cracked and insisting that photographs in Defendants' possession would prove him right.  [Doc. 69] at 3.  Judge Vidmar construed Plaintiff's response as a request for limited discovery under Fed. R. Civ. P. 56(d) and ordered Defendants to produce to Plaintiff and to the Court any and all photographs depicting the windshield as it existed at the relevant time.  [Doc. 71] at 6–7.  Defendants timely produced several dozen photographs on July 15 and 18, 2016.  [Docs. 77, 78].  By July 28, 2016, no party had filed anything further, and Judge Vidmar issued his PF&RD.  [Doc. 81].

## STANDARD OF REVIEW FOR OBJECTIONS TO MAGISTRATE JUDGE'S PF&RD

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which is objection is made." 28 U.S.C. § 636(b)(1).  "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]"  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Moreover, "theories raised for the first time in objections to the magistrate judge's report are deemed waived."  *United States v. Garfinkle*, 261 F.3d 1030, 1030–31 (10th Cir. 2001).

## **SUMMARY JUDGMENT AND QUALIFIED IMMUNITY**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Liberty Lobby,* 477 U.S. at 248. Facts are material only where they might affect the outcome of the suit. *Id.*

While courts "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party, the nonmoving party must present more than a scintilla of evidence in favor of his position." *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citation omitted). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250.

However, where a defendant asserts qualified immunity as a defense, a court's analysis of a summary judgment motion is modified. Once a defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate both that the defendant violated one of the plaintiff's constitutional rights and that the violated right was clearly established at the time of the violation. *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). If the plaintiff successfully satisfies this "heavy two-part burden," the defendant must then prove that "there are no genuine

issues of material fact and that he or she is entitled to judgment as a matter of law." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) (citations omitted).

Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as [he] maintains.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)); *accord Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015). However, courts "do not always require case law *on point*," *Morris v. Noe*, 672 F.3d 1185, 1196–97 (10th Cir. 2012) (emphasis added), and "the Supreme Court has warned that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances,'" *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  Courts "have therefore adopted a sliding scale to determine when law is clearly established.  'The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Casey*, 509 F.3d at 1284 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)); *accord Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008). Although a plaintiff need not show that "the very action in question [has] . . . previously been held unlawful, 'in the light of pre-existing law[,] the unlawfulness must be apparent.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Lastly, in determining whether a plaintiff has satisfied the necessary two-prong qualified-immunity showing, courts ordinarily accept the plaintiff's version of the facts—that is,

7

"the facts alleged," *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)—but "because at summary judgment we are beyond the pleading phase of the litigation, [the] plaintiff's version of the facts must find support in the record," *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009); *see York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) ("As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'" (alterations in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))).

### **INVESTIGATORY STOPS OF VEHICLES**

To justify an investigatory stop, an "officer must have reasonable suspicion to believe that criminal activity may be afoot." *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010) (internal quotation marks omitted). "[T]he existence of objectively reasonable suspicion of illegal activity does not depend upon any one factor, but on the totality of the circumstances." *Id.* (internal quotation marks omitted). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc).

Under New Mexico law, an officer may stop a motor vehicle with a cracked windshield if the officer has reasonable grounds to believe that the crack makes the vehicle dangerous to operate. *State v. Muñoz*, 1998 NMCA 140, ¶ 14, 125 N.M. 765; *see* NMSA 1978,

§§ 66-3-801(A),[2] 66-3-846(A),[3] 66-3-901[4]); *United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001) (finding that a windshield crack about 12 inches across and 6 inches high—large enough that the officer could view it from behind the car—constituted reasonable articulable suspicion that the driver's view was obstructed in violation of Kansas law); *United States v. Alvarez-Becerra*, 33 F. App'x 403, 407 (10th Cir. 2002) (holding that a cracked windshield can support a lawful traffic stop if the officer reasonably believes that the crack makes operating the vehicle dangerous).

---

[2]
> Except as otherwise provided in this section, it is a misdemeanor for any person to drive or move or for the owner to cause or permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as is required by Sections 66-3-801 through 66-3-887 NMSA 1978 or which is equipped in any manner that is in violation of those sections or for any person to do any act forbidden or fail to perform any act required under those sections.

NMSA 1978, § 66-3-801(A).

[3]
> No person shall drive any motor vehicle with any sign, poster or other nontransparent material upon or in the front windshield, windows to the immediate right and left of the driver or in the rearmost window if the latter is used for driving visibility, except as provided in Section 66-3-846.1 NMSA 1978. The rearmost window is not necessary for driving visibility where outside rearview mirrors are attached to the vehicle.

NMSA 1978, § 66-3-846(A).

[4]
> No person shall drive or move on any highway any motor vehicle, trailer, semitrailer or pole trailer or any combination thereof unless the equipment upon every vehicle is in good working order and adjustment as required in the Motor Vehicle Code [66-1-1 NMSA 1978], and the vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway.

NMSA 1987, § 66-3-901.

## ANALYSIS

Judge Vidmar found that the photographs submitted by Defendants depict a crack in the front windshield of Plaintiff's vehicle running horizontally, in the top half of the windshield, for nearly the entire length of the windshield. [Doc. 81] at 9 (citing [Doc. 77] (Exhibit A, photographs labeled E1U08225, E1U08223, E1U08222, EIU08216, C9140869, C9140867, C9140866, C9140860a, C9140860)). He explained that because of the angle at which the photographs were taken, the crack is most obvious in the photographs taken from the rear of the vehicle. *Id.* (citing *e.g.*, [Doc. 77] (Exhibit A, photograph labeled E1U08225)). He found that although the photograph labeled E1U08225 is taken through the rear window, it clearly shows the crack in the front windshield. He determined that no authority suggests—much less clearly establishes—that on seeing such a cracked windshield, a police officer would *not* have reasonable suspicion to initiate a traffic stop. *Id.* In fact, Judge Vidmar determined that the authorities suggest the opposite. *Id.* (citing *Muñoz*, 1998 NMCA 140, ¶ 14; NMSA 1978, §§ 66-3-801(A), 66-3-846(A), 66-3-901; *Callarman*, 273 F.3d at 1287; *Alvarez-Becerra*, 33 F. App'x at 407). Judge Vidmar found that Plaintiff's denial that his windshield was cracked at all was blatantly contradicted by the photographs. *Id.* (citing [Doc. 69] at 3). He found that no reasonable jury could find that there was no crack. *Id.* Accordingly, he found that a reasonable officer, after seeing the crack in Plaintiff's windshield, would have reasonably suspected that Plaintiff was driving the vehicle in violation §§ 66-3-801(A), 66-3-846(A), and/or 66-3-901. Judge Vidmar found that Officer Baker was entitled to qualified immunity for attempting to pull Plaintiff over.

Plaintiff objected to Judge Vidmar's PF&RD and also filed his own Second MSJ. [Docs. 82, 84]. Both filings raise the same issues. In addressing them it is helpful to recall that the standard for determining whether a stop was reasonable is an objective one. "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Botero-Ospina,* 71 F.3d at 787. The Court does not look beyond the observed traffic violation to the subjective intent of the officer in order to determine whether the traffic stop is a "pretext" for pursuing some other investigatory purpose. *Whren v. United States,* 517 U.S. 806, 809–16 (1996); *see City of Indianapolis v. Edmond,* 531 U.S. 32, 45 (2000) (recognizing that *Whren* has established that "an individual officer's subjective intentions are irrelevant to the Fourth Amendment validity of a traffic stop that is justified objectively by probable cause to believe that a traffic violation has occurred"); *United States v. Burkley,* 513 F.3d 1183, 1186 (10th Cir. 2008).

Plaintiff's first argument is that the crack in his windshield was not dangerous. He argues both that there was no "visible" crack and that that the crack was small and on the passenger side. [Doc. 82] at 2–3; [Doc. 84] at 1–2. He argues that the photos contradict Officer's Baker's testimony in her affidavit that she noticed a "large crack" in Plaintiff's windshield. He further argues that the crack in the photos "shows that the vehicle was not obstructed nor was it unsafe to drive." [Doc. 82] at 2; *see* [Doc. 84] at 1–2.

The Court rejects Plaintiff's contention that there was no visible crack in the windshield because it is blatantly contradicted by the photos. There was clearly a crack; no reasonable jury could find otherwise. It is imperative to appreciate that the issue here is not whether the crack

11

actually did make Plaintiff's vehicle unsafe to drive. The issue here is whether the crack could have reasonably made an officer in Officer Baker's position suspicious that the vehicle was dangerous to operate. On de novo review, the Court finds that on seeing the crack in Plaintiff's windshield, a reasonable officer could have reasonably suspected that Plaintiff was driving the vehicle in violation of §§ 66-3-801(A), 66-3-846(A), and/or 66-3-901.

Plaintiff's second argument is that the photos tend to show that Officer Baker is lying about *when* she saw the crack. *See* [Doc. 82] at 3; [Doc. 84] at 2, 3, 5. Officer Baker averred that she first noticed the crack from the front of the vehicle, after which, she turned her patrol vehicle around to attempt to pull Plaintiff over. [Doc. 68-2] at 2. Plaintiff reasons that because the crack is not immediately obvious in the photos taken from the front of his vehicle, Officer Baker could not have seen the crack from the front of his vehicle either. [Doc. 82] at 3; [Doc. 84] at 2, 3, 5. Officer Baker's affidavit indicates that she saw the crack from the front, then she turned her vehicle around, got behind Plaintiff's vehicle, and then attempted to pull him over. [Doc. 68-2] at 2, ¶¶ 6–8. The issue is not whether Officer Baker saw the crack from the front of Plaintiff's vehicle or from the rear. The issue is whether the crack in Plaintiff's windshield provided sufficient grounds for a reasonable officer to be suspicious that the Plaintiff's view was obstructed. The Court finds that that the crack was enough to justify attempting to pull over Plaintiff's vehicle.

Finally, Plaintiff argues that Officer Baker's true motive for pulling him over was to check his identity. He argues that the cracked windshield was a pretext for checking to see whether he was Mr. Yanez. [Doc. 82] at 1, 2. Plaintiff argues that pretextual stops violate the New Mexico Constitution. [Doc. 82] at 4 (citing *New Mexico v. Ochoa*, 2009-NMCA-002, ¶ 38,

12

146 N.M. 32); [Doc. 84] at 4, 5, 7, 8 (same). Plaintiff argues that the evidence tends to show that Officer Baker did not truly care about the crack when she tried to stop his vehicle. He says that she did not testify at trial about the details of the crack, instead admitting that she wanted to check his identity, and he was never cited for driving with a cracked windshield. [Doc. 84] at 2, 7, 8. The Court declines to address Plaintiff's claims regarding the New Mexico Constitution. The United States Constitution, which this Court is charged with interpreting in this case, does not prohibit pretextual stops. *Whren*, 517 U.S. at 809–16; *Burkley*, 513 F.3d at 1186. One point should be clear: the Court makes no determination about Officer Baker's subjective motivations for attempting to stop Plaintiff's vehicle. The Court does not pass on whether or not the cracked windshield was or was not a pretext for some other investigative reason. Even if the stop had been pretextual, it would not matter here. Pretextual stops are permissible under the United States Constitution. *Whren*, 517 U.S. at 809–16.

## **CONCLUSION**

The Court is not persuaded by Plaintiff's arguments. On de novo review, the Court finds that the undisputed facts establish that Officer Baker is entitled to qualified immunity for attempting to pull over Plaintiff's vehicle. Plaintiff's objections to the PF&RD will be overruled, and both of his motions for summary judgment will be denied. Defendants' Second MSJ will be granted. Plaintiff's one remaining federal claim will be dismissed with prejudice.

The Court has considered Plaintiff's request that it retain jurisdiction of the state-law claims to mitigate the "mental and physical distress that Plaintiff is already enduring from the whole ordeal." [Doc. 84] at 11. However, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Ball v. Renner*, 54

F.3d 664, 669 (10th Cir. 1995) (internal quotation marks and citation omitted).  The state-law claims will be dismissed without prejudice.

      **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that:

1) the objections contained in Plaintiff's Opposition to PF&RD [Doc. 84] are **OVERRULED**;

2) the PF&RD [Doc. 81] is **ADOPTED**;

3) Plaintiff's Motions for Summary Judgment [Docs. 65, 82] are **DENIED**;

4) Defendants' Second MSJ [Doc. 68] is **GRANTED**;

5) Defendants' Motion to Strike [Doc. 83] is **DENIED as moot**;

6) Plaintiff's one remaining federal claim is **DISMISSED with prejudice**; and

7) Plaintiff's state-law claims are **DISMISSED without prejudice**.

      **IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**United States District Judge**